UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**HARRIET SHOEMAKER,**                  Case No. 1:10-cv-001

    **Plaintiff,**                                  Weber, J.
                                               Wehrman, M.J.

    v.

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; (2) THE PLAINTIFF'S MOTION TO REMAND [DOC. 7] BE DENIED; AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal filed by plaintiff, through counsel, proceeding pursuant to 42 U.S.C. § 405(g). Two issues are presented: 1) whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to Disability Insurance Benefits ("DIB"), s*ee* Administrative Transcript, Tr. at 19-29, ALJ's decision; and 2) whether plaintiff is entitled to a Sentence Six remand, *see* Doc. 7 (motion to remand).

**I.**

Plaintiff Harriet Shoemaker filed an application for DIB on June 9, 2006, alleging a disability onset date of May 31, 2006, due to a herniated disk. (Tr. 110-112, 85). She was 46 years old at the time of the alleged disability. (Tr. 14). After plaintiff's claims were denied initially and upon reconsideration, (Tr. 79-81, 85-86), she requested a hearing *de novo* before an ALJ. (Tr. 88). On June 24, 2008, an evidentiary hearing was held, at which she was represented by counsel. (Tr. 16). At the hearing, the ALJ heard testimony from plaintiff, David Randolph, M.D., an occupational physician, and Robert E. Breslin, a vocational expert. (Tr. 16-75).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

On January 9, 2009, the ALJ entered his decision denying plaintiff's claim. (Tr. 8-15). The Appeals Council denied her request for review on October 29, 2009. (Tr. 1-3). Thus, the ALJ's decision stands as the defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements for disability insurance benefits on her alleged onset date of May 31, 2006, and continues to meet them through December 31, 2011.

2. There is no evidence that the claimant has engaged in any substantial gainful activity since her alleged onset date (20 CFR 404.1571 *et seq.*).

……………………….

3. The claimant has the following severe impairments: degenerative disc disease and facet arthropathy of the lumbar spine, as well as residuals of total hip replacement surgery including a leg length discrepancy (20 CFR 404.1521 *et seq.*).

………………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

…………………………

5. Careful consideration of the entire record shows that the claimant has the residual functional capacity to perform a range of sedentary work, as set forth below.
…………………………..

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

……………………………

7. The claimant was born on January 19, 1960, was 46 years old on her alleged onset date, and considered to be a younger individual (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

        that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

        ……………………………..

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569 and 404.1569a).

        ……………………………...

11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2006 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 10-15). In summary, the ALJ concluded that plaintiff was not under disability as defined by the Social Security Regulations and was therefore not entitled to DIB. (Tr. 15).

On appeal to this court, plaintiff maintains that the ALJ erred by: (1) improperly giving more weight to the consulting physicians than to plaintiff's treating physicians; (2) finding that plaintiff is capable of performing sedentary work, notwithstanding the fact that she requires a cane; (3) not affording plaintiff's testimony about the limiting effect of her symptoms full credibility; (4) not indicating that plaintiff needed a cane to ambulate in the interrogatories given to the vocational expert; and (5) failing to find that plaintiff was disabled for a closed period of time since her alleged onset date. (Doc. 15, at 4-9). The second and fourth assignments of error are so closely related that they are considered together; otherwise, the plaintiff's statements of error are discussed *in seriatum*.

In addition to her statement of errors, plaintiff has filed a separate motion to remand in order to require the defendant to consider new evidence. Doc. 7.

**II.**

The court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the SSA asks if the claimant is still performing substantial gainful activity; at Step 2, the SSA determines if one or more of the claimant's impairments are "severe;" at Step 3, the SSA analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the SSA determines whether or not the claimant can still perform his or her past relevant work; and finally, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

The plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must

present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

Plaintiff's claim of disability is based upon back pain (she underwent back surgery in May, 2005) and hip pain (she underwent hip replacement surgery -twice - in 2008). She also alleges leg pain. Plaintiff first argues that the ALJ erred by overvaluing the opinions of consulting physicians, Dr. Vitols and Dr. Randolph, and by disregarding the opinions of plaintiff's treating physicians, Dr. Minhas and Dr. Raneses. (Doc. 6, at 4).

Dr. Minhas, who was plaintiff's pain specialist, and Dr. Raneses, her primary care physician, both completed residual functional capacity "RFC" questionnaires. Both determined that plaintiff could not sit, stand, and/or walk for a total of 8 hours in a day, as required for full-time work. (Tr. 289-91, 307-09). At the hearing, Dr. Randolph, a non-examining medical expert, testified that there was inadequate objective medical evidence to support either Dr. Minhas' or Dr. Raneses' RFC findings, although he did not make any contrary RFC findings. (Tr. 48-68). Therefore, the ALJ ordered a consultative examination to determine plaintiff's work-related limitations. (Tr. 67-68).

Dr. Vitols performed the consultative physical examination, (Tr. 392-405), and determined that plaintiff was capable of performing a reduced range of sedentary work on a full-time basis. (Tr. 400-05). The ALJ gave greater weight to Dr. Vitols' opinion than to the two referenced treating physicians, explaining as follows:

> Because the assessment of Dr. Vitols is based upon a complete physical examination specifically directed at ascertaining the claimant's limitations, it deserves great weight. Dr. Vitols is an orthopedic surgeon and is certified by the American Board of Independent medical examiners. As noted above, Dr.

5

> Randolph maintains, and I agree, that the examinations by the treating sources offer little in the way of signs and findings. Although often a treating source opinion is given more weight than a non-treating source, as pointed out by Dr. Randolph, there are no physical examinations cited to upon which the treating sources relied for their assessments. Dr. Vitols, on the other hand, conducted an examination particularly targeted at determining the claimant's abilities, and he is a specialist in the field involved.

(Tr. 13).

Plaintiff argues that the ALJ erred by failing to find the limitations assessed by two of her treating physicians.[2] (Doc. 6, at 5). Plaintiff maintains that the ALJ did not provide "good reasons" for rejecting their opinions, as required by 20 C.F.R. § 404.1527(d)(2), §1527(d)(2). Plaintiff compares her case to that of *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009), in which "[t]he only stated reason the administrative judge gave for rejecting the treating physician's medical opinion ....was that another [consulting] physician had reached the opposite conclusion." The Sixth Circuit held that was "not an adequate basis for rejecting" a treating physician's opinion. *Id.*

The ALJ must evaluate and consider the following factors in deciding the amount of weight to give each medical opinion: examining relationship, treatment relationship, length and/or frequency of treatment, nature and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization, and other factors. 20 C.F.R. § 1527(d). Although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is

---

[2]Dr. Jacquemin, a third treating physician, released plaintiff to light work in June 2005 following back surgery. In July 2006, a state agency physician concurred that plaintiff was capable of performing a reduced range of light work.

6

entitled to discredit the opinion as long as he sets forth a reasoned basis for...rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2).

The opinions that the ALJ rejected were "RFC" questionnaires that indicated that plaintiff could sit, walk, or stand for no more than 5-6 hours per day. Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's RFC is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). Unlike *Hensley*, the ALJ's decision to reject the RFC assessments in this case satisfies the "good reasons" requirement. The RFC form completed by Dr. Minhas was completed in 2007, following plaintiff's back surgery but prior to her hip replacement. Dr. Randolph stated that Dr. Minhas' treatment notes are "remarkable in that they really don't document anything objective with respect to her low back…" (Tr. 52). Specifically, Dr. Randolph observed that there was no documentation of plaintiff's reflexes, or her sensory and motor skills. (Tr. 60). Dr. Randolph also testified that Dr. Minhas' treatment notes used the same words over multiple office visits, and that the words were often presented "in a boilerplate fashion." (Tr. 60-61). This court's review of the same medical records supports that assessment. Overall, Dr. Randolph emphasized that he could not rely on the statements in Dr. Minhas' treatment notes due to the lack of any supporting objective medical evidence in the record. (Tr. 59-61). The ALJ adopted that opinion based on the same record review.

Dr. Randolph-whose criticisms of the treating physicians' opinions were adopted by the ALJ - disputed the reliability of Dr. Raneses' notes for similar reasons. Dr. Randolph testified that Dr. Raneses' treatment notes were "remarkable" because even though Dr. Raneses had been "seeing [plaintiff] on a regular basis for a prolonged time frame . . . he documents a lot of her subjective complaints . . . [but] there's very little in the way of physical examination information here." (Tr. 53). For example, even the "scattered references" to presumed physical

7

examination(s) provided no information about plaintiff's neurological status or the range of motion of her hip.  (*Id.*)  Dr. Raneses referenced the existence of an EMG that was performed in early 2005 (prior to the claimed onset of disability), but no results were included in Dr. Raneses' treatment notes or elsewhere in the record. (Tr. 53).  Plaintiff herself was unaware of the EMG results (Tr. 50).  In addition, Dr. Randolph noted that Dr. Raneses did not document performing a hip exam when he conducted a preoperative physical for plaintiff's hip.  (Tr. 54).  A third example of a disconnect between medical records and Dr. Rameses' RFC  form arises from the fact that Dr. Raneses completed the form in May 2008, during a period of time when plaintiff was still recuperating from her second hip replacement surgery.  Dr. Raneses' opinion that plaintiff could "occasionally" climb and balance just four weeks after her second hip replacement was unsupported by the record.  (Tr. 65, 308).

In agreeing with Dr. Randolph and rejecting the RFC forms completed by the treating physicians, the ALJ explained that "the examinations by the treating sources offer little in the way of signs and findings."  (Tr. 13).  20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.*  (emphasis added). The plaintiff points to no "objective medical evidence" in the record that would undermine the ALJ's stated reasons for rejecting the RFC assessments of the treating physicians.  Rather, plaintiff suggests that the ALJ "could have recontacted Dr. Ranses [sic]" in order to obtain range-of-motion results and other objective medical evidence that might have supported Dr. Raneses' opinion.

8

Plaintiff is correct that the ALJ "could have" re-contacted the treating physicians.  In fact, 20 C.F.R. §404.1512 states, in relevant part:

> (e) Recontacting medical sources.  When the evidence we receive from your treating physician...is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
>> (1) We will first recontact your treating physician...to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. ....
>>
>> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.
>
> (f) Need for consultative examination.  If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense....

Dr. Randolf testified at the evidentiary hearing in June of 2008 that there were many "holes in the record" (Tr. 38).  Dr. Randolf specifically noted the absence of objective examination or other records from 2006 to support disability based upon the lower back problems following back surgery, the lack of recent records assessing plaintiff's recovery form her hip surgery (Tr 37), and the lack of any objective evidence, such as EMG results, to support a diagnosis of radiculopathy or of post laminectomy syndrome (Tr 36, 60-62), or to support some of her prescribed medications (Tr. 37).  Ultimately, Dr. Randolf testified that he simply lacked sufficient information to determine whether or not plaintiff met a disability Listing, despite noting that plaintiff's back and hip issues *could* equal a Listing under some circumstances, if supported by additional evidence. (Tr. 41-42, 66).  After reviewing the same

9

records and hearing Dr. Randolph's testimony, the ALJ found that the treating physicians' opinions were unsupported by objective medical evidence.

What the ALJ did next presents the closest issue in this case. Instead of re-contacting the treating physicians under 20 C.F.R. §404.1512, the ALJ held the record open in order to permit examination by a consulting physician. However, before he did so, he (together with Dr. Randolf) clearly explained why he was unable to accept the treating physicians' RFC assessments without supporting objective medical evidence. The ALJ then informed claimant's counsel that he was "inclined to try for, for another consultative examination," since the claimant had never been examined "with both her hip and her back considered." (Tr. 66). The ALJ asked claimant's attorney if he would have any objection to that procedure; he stated that he did not, and concurred with the ALJ's suggestion that they hold the record open in order to obtain a complete physical exam from a consulting physician. (Tr 68).

Pursuant to 20 C.F.R. § 404.1512(e), the ALJ is only required to recontact a treating physician where the ALJ finds that there is inadequate information to determine the claimant's disability status, not where the ALJ rejects the physician's proposed limitations. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 156-57 n.3 (6th Cir. 2009). However, the regulation provides discretion to the Commissioner not to recontact a treating physician if "past experience [suggests] that the source either cannot or will not provide the necessary findings." The record is silent as to whether the ALJ made the determination not to recontact Dr. Minhas or Dr. Raneses on that basis. However, given the "good reasons" stated by the ALJ for rejecting the RFC assessments by the treating physicians, as well as plaintiff's counsel's clear assent to the use of a consulting physician to assess plaintiff's full limitations, the use of the consulting physician in lieu of recontacting the primary care physicians was not error.

10

In contrast to the opinion of the treating physicians, the opinion of the consulting physician, Dr. Vitols, was based on objective evidence. The ALJ recognized that Dr. Vitols was a specialist in the field, as an orthopedic surgeon and board-certified independent medical examiner. (Tr. 13). Dr. Vitols performed a complete physical examination of plaintiff specifically designed to ascertain plaintiff's work-related limitations. (Tr. 392-405). The physical examination included manual muscle testing and range of motion testing. (Tr. 396-99). In addition, Dr. Vitols reviewed x-rays of plaintiff's right hip and lumbar spine. (Tr. 294). Therefore, substantial evidence supports the ALJ's decision to give great weight to Dr. Vitols' RFC finding because it was based on objective medical evidence.

**B.**

Plaintiff claims that the ALJ's RFC finding was erroneous because he failed to consider that plaintiff needed a cane to ambulate in determining that she could perform sedentary work, and specifically that she could occasionally carry ten pounds. (Doc. 6, at 6). However, in the RFC finding, the ALJ stated that plaintiff "can ambulate 2 to 3 blocks without the use of a cane." (Tr. 14). Therefore, the ALJ considered plaintiff's use of a cane.

Plaintiff further argues that the ALJ erred by not referencing plaintiff's cane in the interrogatories given to the vocational expert (VE). (Doc. 6, at 6). However, the interrogatories asked the VE to identify jobs that plaintiff could perform within the restrictions specified by Exhibit 15F.[3] (Tr. 184-86). Exhibit 15F is Dr. Vitols' consultative examination report, (Tr. 392), which clearly explains that plaintiff requires a cane, and can only ambulate two to three blocks without it. (Tr. 401). Therefore, the VE included plaintiff's cane use in formulating the RFC.

---

[3] Interrogatory 11 provides that the VE should state whether plaintiff could perform any of the past relevant work "based upon the limitations set forth in Exhibit 15F." Interrogatory 12 provides: "[i]dentify any jobs, within the national or regional economy, which an individual can perform within the restrictions contained in Interrogatory 11." (Tr. 185-86). Thus, Interrogatory references the limitations set forth in Exhibit 15F.

11

Similarly, plaintiff contends that it was error for the ALJ to find that plaintiff could carry ten pounds, despite needing a cane to ambulate. (Doc. 6, at 6). Social Security Ruling 96-9p provides: "[s]ince most unskilled sedentary work requires only occasional lifting and carrying of light objects . . . an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements … with the other hand." SSR 96-9p (1996), *available at* 1996 WL 374185, at *7. In fact, even the rejected RFC assessments of the two treating physicians reflected that plaintiff could occasionally lift and carry up to 10 pounds. A vocational expert may be used to determine whether a claimant can perform certain jobs with the use of a cane. *Id.* Because the VE was instructed to base his RFC finding on all of plaintiff's limitations (including the cane use) and still determined that plaintiff could perform certain sedentary jobs, it was reasonable for the ALJ to rely on his conclusion.

## C.

Plaintiff's third statement of error finds fault with the ALJ's conclusion that her testimony was not entirely credible. (Doc. 6, at 6-8). Specifically, plaintiff claims that the ALJ failed to consider all the factors listed in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, and failed to adequately account for the side effects of her medication and alleged restrictions in her daily activities. (*Id.*)

The ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity." (Tr. 12). Because the ALJ found inconsistencies between the objective medical evidence and plaintiff's testimony about the side effects of her

12

medications, it was permissible for the ALJ to decide to discredit plaintiff's testimony about the severity of her symptoms. (*Id.*)

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In this case, the ALJ reasonably discredited plaintiff's testimony to the extent that it conflicted with the RFC finding. The plaintiff alleged that her medications caused such severe side effects- including fatigue, forgetfulness, bad dreams, and constipation - that she "couldn't function." (Tr. 44). However, plaintiff's treating physician's notes reflect on numerous occasions that plaintiff "denies having any side effects from the same pain medications."[4] (Tr. 12, 262-74, 311-18). When a plaintiff reports side effects at the hearing that she previously failed to report (or in this case, denied) to her physician, it is not error for an ALJ to find

---

[4] Dr. Minhas' notes consistently state: "The patient denies having any side effects from the medications. Denies nausea,vomiting, diarrhea, constipation." (Tr. 262-74, 311-18).

13

inconsistency and disregard the claim of disabling side effects.  *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004).

Plaintiff also argues that the ALJ erred by discrediting her reported limitations in daily activities.  (Doc. 6, at 7).  At the hearing, plaintiff testified that she does not do anything outside of her home and does very little in her home.  (Tr. 45).  Plaintiff testified that she cannot take her daughter to the bus stop due to pain.  (Tr. 41).  Plaintiff also testified that she was not able to sit for more than twenty minutes and that she has to lie down for five or six hours a day.  (Tr. 41-42).  The ALJ determined that "plaintiff's reported limitations in daily activities are . . . inconsistent with the medical evidence of record."  (Tr. 12).

Substantial evidence supports the ALJ's finding that plaintiff's reported limitations in daily activities conflict with the medical evidence in the record.  Plaintiff has failed to point to any medical record that would support her self-described inability to sit for twenty minutes at a time, or her alleged need to lie down for five or six hours a day.  In fact, even the discredited opinions of plaintiff's treating physicians determined that she could sit for two hours without interruption and stand and walk for one to two hours without interruption.  (Tr. 289-91, 307-09). The consultative physician determined that plaintiff can sit for one hour without interruption and four hours total in an eight hour work day.  (Tr. 401).  Because the severity of restrictions in plaintiff's reported daily activities were not supported by any medical evidence, it was proper for the ALJ to discount the credibility of her account.

Although the ALJ did not provide detailed reasons for discounting plaintiff's credibility, the error is harmless in this case.  *See Spicer v. Apfel*, 15 Fed. App'x 227, 234 (6th Cir. 2007) (finding harmless error where the ALJ did not provide detailed reasons for his credibility assessment because the ALJ had considered the claimant's subjective complaints but ultimately

14

gave more weight to the objective medical evidence). As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports the ALJ's decision to discredit plaintiff's statements about the severity of her symptoms.

## D.

Finally, plaintiff generally argues that the ALJ erred by failing to find that plaintiff was disabled for a closed period of time after the alleged onset date. (Doc. 6, at 8-9). Plaintiff states: "[i]t is hard to imagine that [plaintiff] was not disabled for any period of at least 12 consecutive months . . . ." (*Id.* at 9). However, plaintiff has not presented any specific dates for the closed period, nor does she point to any specific medical records in support. As noted above, the plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Plaintiff's failure to define any specific 12- month period, or to point to supporting records for a specified period, falls short of the proof required to demonstrate a closed period of disability.

## III.

In addition to her statement of errors, plaintiff has filed a separate motion to remand this case in order to present new evidence under Sentence Six of the Social Security Act, 42 U.S.C. §405(g). Pursuant to that provision, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is material, and also establishes good cause for her failure to present the evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). In this case

plaintiff seeks to introduce a June 2009 report from Dr. Bohinski that provides a diagnosis of "degenerative disc disease..with moderate central canal stenosis..." (Tr. 407). However, the record before the ALJ included a diagnosis of degenerative disc disease dating at least back to February 2004 (Tr. 389) and the ALJ specifically referenced that diagnosis in his opinion. (Tr. 10). The record also included a prior diagnosis of stenosis (Tr. 299); therefore, Dr. Bohinski's report contains no "new" or "material" information but is instead cumulative. In addition, plaintiff fails to establish good cause - or any reason at all - why Dr. Bohinski's evidence could not have been presented before the ALJ.

For similar reasons, the August 2009 note from Dr. Wahl containing the single statement that plaintiff "is recommended NOT to work due to significant medical issues and medication side effects" does not warrant remand. "Material evidence is evidence that would likely change the Commissioner's decision." *Bass v. McMahon,* 499 F.3d at 513 (citation omitted). Dr. Wahl's note is conclusory and unlikely to be given any weight by the ALJ. Plaintiff offers no reason for failing to obtain this opinion prior to the ALJ's decision other than the fact that she began treating with him after January 2009. Presumably she could have obtained a similar opinion regarding her medication side effects prior to the ALJ's decision, but instead the notes of her treating physicians reflected that she expressly denied to them any such side effects.

Of course, to the extent that plaintiff has new evidence that her condition has worsened, she is free to submit a new application for benefits. *See, e.g., Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). It is the function of this court only to review whether the "new" evidence warrants remand under Sentence Six. In this case, it does not.

## IV.

.       For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**;

2.  Plaintiff's motion to remand this case under Sentence Six to consider new evidence [Doc. 7] be **DENIED**; and

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**


DATE: September 3, 2010                                       J. Gregory Wehrman
                                                              J. Gregory Wehrman
                                                              United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**HARRIET SHOEMAKER,**                                                    Case No. 1:10-cv-001

    **Plaintiff,**                                                          Weber, J.
                                                                             Wehrman, M.J.
    v.

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## NOTICE

    Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).